**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY ROSEN,<br><br>    Plaintiff,<br>v.<br><br>DAVID MARK LIEBERMAN,<br><br>    Defendant. | Civil Action No. 16-7341 (JLL) (JAD)<br><br>OPINION |

JOSEPH A. DICKSON, U.S.M.J.

This matter comes before the Court upon Defendant David Mark Lieberman's ("Defendant") Motion to Transfer Venue to the United States District Court for the District of Central California pursuant to 28 U.S.C. §1404(a). (ECF No. 8). This Court has original diversity jurisdiction pursuant to 28 U.S.C §1332. (Compl., ECF No. 1). In accordance with Rule 78 of the Federal Rules of Civil Procedure, the Court did not hear oral argument on Defendant's application. Upon careful consideration of the parties' submissions, and for the reasons stated below, Defendant's Motion to Transfer is **DENIED**.

### I. Factual Background

On October 17, 2016, Pro Se Plaintiff filed a Complaint against defendant Mark Lieberman ("Defendant") for breach of contract and fraud. (Compl., ECF No. 1). The claims in the matter are connected to formal and informal agreements allegedly agreed upon between the parties. (Id. at 2-3).

When receiving a pro se complaint, a court must construe a plaintiff's factual allegations and his or her claims liberally. See Neitzke v. Williams, 490 U.S. 319, 330 n.9, (U.S. May 1, 1989).

Plaintiff's complaint is confusing as it is not in chronological order. (See generally Id.). Plaintiff identifies numerous events that led to the claims for breach of contract and fraud in his Complaint. The first incident Plaintiff identifies was a promise by Defendant to repay a "personal loan" in the amount of $17,000 plus interest. (Compl. at 5-8, ECF No. 1 and Pl. Sur-Rep. at 2, ECF No. 13). Plaintiff alleges that on both July 3 and July 4, 2012, Defendant contacted Plaintiff and promised he would repay Plaintiff's loan from the funds he received from a settlement under the James Zadroga 9/11 Health and Compensation Act. ((Compl. at 5, ECF No. 1 and Pl. Sur-Rep. at 2, ECF No. 13). Second, Plaintiff alleges that from February to September 2013, Defendant made "false representations" that Defendant would be able to attain "regulatory approval for content providers" from the Film Development Counsel of the Phillipines and other Filipino agencies, politicians, and businesses and to enter the Phillipine market without violating the Foreign Corrupt Practices Act". (Pl. Sur-Rep. at 5-6, ECF No. 13) (See Compl. at 6, ECF No. 1). Furthermore, Plaintiff alleges that from May 2013 through October 2013, Defendant misrepresented that he had obtained such approval. (Compl. at 7, ECF No. 1). Third, Plaintiff alleges that Defendant promised to compensate Plaintiff for numerous projects Plaintiff had performed, including the licensing of a film entitled, "Thy Womb" and "Sapi." (Id. at 7-9). Plaintiff alleges that Defendant did not meet his promises nor compensate Plaintiff for the work performed. (Id.). Finally, Plaintiff alleges that on March 17, 2014, Plaintiff informed Defendant that he was planning to sue Defendant for the fraud Defendant allegedly committed against Plaintiff. (Id. at 10). Plaintiff alleges that on April 2, 2014, Defendant agreed to the following:

> On April 2, 2014, Mr. Lieberman agreed to repay his personal loan with 5% interest (accruing as of April 15, 2009) and compensate Mr. Rosen 15% of his Zadroga settlement upon receipt of funds, which Mr. Lieberman represented would be paid in two installments: 10% in 2015, and the remaining 90% in 2016.

(Compl. at 26, ECF No. 1). Plaintiff alleges that he never received the payments pertaining to the agreement. (Id.). Plaintiff alleges that as a result of Defendant's fraud, Plaintiff lost his "entire income and was excluded from prior business opportunities." (Pl. Opp., ECF No. 9 at 6).

## II. Procedural History

Plaintiff initiated this action by filing a complaint in the United States District Court for the District of New Jersey, on October 17, 2016 ("Complaint"). On January 3, 2017, Defendant filed a motion to transfer venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C §1404. (ECF No. 8-1). Plaintiff filed an opposition to Defendant's motion to transfer on January 23, 2017. (ECF No. 9). On February 13, 2017, Defendant filed a reply in response to Plaintiff's opposition. (ECF No. 12). Plaintiff then filed a sur-reply on March 07, 2017. (ECF No. 13). On April 06, 2017, as ordered, both Parties appeared before Magistrate Judge Joseph A. Dickson for a Status Conference. (Order, ECF No. 14). There, the Court ordered the parties to submit settlement position letters. However, settlement negotiations did not resolve the case.

## III. Legal Standard

28 U.S.C. §1404(a) and 28 U.S.C. §1406(a) govern venue transfers in civil cases. A district court may only dismiss or transfer a case under §1406(a) if it finds the original venue improper. Alternatively, §1404(a) gives a district court discretion to transfer venue for the convenience of the parties even if the court finds that the original venue is proper under 28 U.S.C. §1391(b). 28 U.S.C. §1391 sets forth the standards for venue in the United States District Court. See 28 U.S.C. §1391(a) ("Except as otherwise provided by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States"). \

Section 1391(b) provides the following standard for determining whether venue is proper:

Venue in General – A judicial decision may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Defendant requests that this Court transfer this action to the Central District of California, Western Division pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a). (Def. Br. at 2, ECF No. 8-1). This statute provides, in pertinent part, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. The purpose of §1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotations and citations omitted). The decision of whether to transfer a case is committed to the trial court's sound discretion. Cadapult Graphic Sys. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000); Days Inns Worldwide, Inc. v. RAM Lodging, LLC, No. 09-2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010).

**Jumara Factors:**

Once the Court determines whether venue is appropriate, the Court must analyze the private and public interest factors relevant to Defendant's transfer application. As discussed below, the United States Court of Appeals for the Third Circuit enumerated those factors in

Jumara, 55 F.3d at 879-80. The Court also notes that Defendant retains the burden of establishing that transfer is appropriate. In re Amendt, 169 F. App'x 93, 96 (3d Cir. 2006).

In determining whether to transfer a matter pursuant to §1404(a), and based on the plain language of that statute, a court must consider:

> (1) the convenience of the parties;
>
> (2) the convenience of the witnesses; and
>
> (3) the interests of justice.

Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481, 497 (D.N.J. 1998).

In addition to these statutory factors, the United States Court of Appeals for the Third Circuit has established a list of public and private interests that a court should examine when deciding whether to transfer an action:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879-80 (3d Cir. 1995)).

The Court must conduct an "individualized, case-by-case consideration of convenience and fairness" regarding which forum is most appropriate to consider the case. Id. "There is no rigid rule governing a court's determination; 'each case turns on its facts.'" Id. (citing Lacey v. Cessna

5

Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (internal citations omitted)); Rappoport, 16 F. Supp 2d at 498 ("Transfer analysis under Section 1404 is a flexible and individualized analysis and must be made on the unique facts presented in each case.") (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249-250 (1981)). The Court is also mindful of the Third Circuit's admonition against any court considering the merits of a case during the pendency of a transfer application. McDonnell Douglas Corp. v. Polin, 429 F.2d 30 (3d Cir. 1970) ("Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected and such consideration additionally requires that the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts.").

**IV.   Analysis**

**A.   This action could have been brought in the Central District of California, Western Division.**

As a threshold issue, the Court must determine whether venue for these matters would be appropriate in a federal district court in California. Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999). If venue is not appropriate in that District, the Court may not effectuate the requested transfers pursuant to 28 U.S.C. § 1404(a). The parties do not dispute that Defendant currently resides at 5751 Camellia Avenue, North Hollywood, California. (Def. Br. at 3, ECF No. 8-1); (Def. Cert. at 1, ECF No. 8-2). North Hollywood California is located in the Central District of California, Western Division. Venue would, therefore, be appropriate in that District. See 28 U.S.C. §1391(b)(1). Because Defendant is subject to personal jurisdiction in the Central District of California, Western Division and is the only Defendant in this case, Plaintiff could have properly brought the case in the Central District of California, Western Division in accordance with 28 U.S.C. §1391(b)(1).

## B. Jumara Analysis

Having determined that venue for these cases would be appropriate in the United States District Court for the Central District of California, Western Division, the Court must now analyze the private and public interest factors relevant to Defendant's transfer application. As discussed above, the United States Court of Appeals for the Third Circuit enumerated those factors in Jumara, 55 F.3d at 879-80. The Court also notes that Defendant retains the burden of establishing that transfer is appropriate. In re Amendt, 169 F. App'x 93, 96 (3d Cir. 2006).

### 1. Private Interest Factors

With regard to the "private interest" factors relevant to a §1404(a) analysis, the Third Circuit has directed courts to consider "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial in one of the forum; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Jumara, 55 F.3d at 879-80. The Court will address each of these factors in turn.

#### a. The Parties' Choice of Forum

Within the Third Circuit, a plaintiff's choice of forum is a "paramount concern" in deciding a motion to transfer venue. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). When a plaintiff chooses its home forum, that choice is "entitled to greater deference." Sandvik, Inc. v. Cont'l Ins. Co., 724 F. Supp. 303, 307 (D.N.J. 1989). The Court acknowledges, however, "when the central facts of a lawsuit occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight." NCR Credit Corp., 17 F. Supp. 2d at 321; Melone v. Boeing Co., No. 07-

cv-1192 (DMC), 2008 U.S. Dist. LEXIS 25367, *5-6 (D.N.J. Mar. 28, 2008) ("Deference to the plaintiff's selected forum is also diminished 'where the central facts of a lawsuit occur outside the chosen forum' or the plaintiff's choice of forum 'has little connection with the operative facts of the lawsuit.'") (quoting In re Consolidated Parlodel Litig., 22 F. Supp. 2d 320, 324 (D.N.J. 1998)).

Perhaps the most critical issue in this case is where the central facts of this case took place. Plaintiff is a Pro Se Litigant that chose his home fora for this litigation. Plaintiff asserts that the proposed forum has no connection to this case. (ECF No. 9 at 2). Defendant admits "the alleged conduct about which Plaintiff complains occurred while Defendant temporarily resided in the Philippines." (ECF No. 8 at 4). However, Defendant argues that the "central facts" occurred in California. (Def. Rep., ECF No. 12 at 5). In support of Defendant's argument, Defendant sites to three e-mails included in Plaintiff's opposition exhibits. Defendant states,

> Plaintiff attaches three e-mails from Defendant while he was in Los Angeles that (i) concern business opportunities with Fox International, which is located in California, and Sanford Paninich, a resident of California, (ii) concern meetings with Netflix, which is headquartered in California, and Ted Sarandos, a resident of California, and (iii) discuss Defendant's stress and related physical ailments.

(Def. Rep., ECF No. 12 at 4). (Pl. Opp. Cert., ECF No. 9-1, Ex. A-C).

While the Court acknowledges that Defendant would prefer to litigate in the Central District of California, he is the moving party here, and thus bears the burden of persuasion regarding their motions to transfer. Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir.1973). Although Defendant identifies three "opportunities" that would have taken place in California, the Court finds that Defendant failed to establish that the central facts of this case took place in California. A review of the Complaint reveals that a substantial part of the events or omissions giving rise to the claims by Plaintiff occurred in this District and the Phillipines. The nexus to this

District appears to be that Plaintiff while residing in New Jersey allegedly performed work for Defendant under the alleged agreements and communicated with Defendant who resided in the Phillipines. (Pl. Opp. Cert., ECF No. 9-1, at 2). Based on a reading of all the pleadings, it seems that most of the communications between the parties took place over e-mails or telephonically. Furthermore, Plaintiff alleged that there were numerous agreements made between the parties that consist of Defendant agreeing to pay Plaintiff for money owed while Defendant resided in the Phillipines. Some of these agreements refer to possible deals with businesses that are based in California. However, in reading Plaintiff's Complaint, it seems that Plaintiff brings claims against Defendant for failure to pay Plaintiff for various assignments performed throughout the years 2012 through 2014 and for the misrepresentations made by Defendant in order to induce Plaintiff to continue performing the assignments. (See Compl. at 24-25, ECF No. 1). It is unclear which deal had more value or whether any of the deals came to fruition. The Court will not, therefore, reduce the deference afforded to Plaintiff's choice of forum. Accordingly, this factor weighs against transfer.

### b. Where the Cause of Action Arose

"This factor turns on which forum contains the center of gravity of the dispute, events, and transactions." Depuy Synthes Sales, Inc. v. Gill, No. 13-4474 (JAP), 2013 U.S. Dist. LEXIS 154825, *21 (D.N.J. Oct. 29, 2013) (citing Park Inn Int'l, L.L.C. v. Mody Enters., 105 F. Supp. 2d 370, 377-78 (D.N.J. 2000); accord Master Cutlery, Inc. v. Panther Trading Co., No. 12-4493 (JLL), 2012 U.S. Dist. LEXIS 178639, *9-10 (D.N.J. Dec. 14, 2012) ("'The locus of the alleged culpable conduct determines the place where the claim arose.'") (internal citations omitted).

In contract actions, "the factors determining where the claim arose include where the contract was negotiated or executed, where the contract was to be performed, and where the alleged

breach occurred." Frato v. Swing Staging, Inc., Civ. A. No. 10–5198, 2011 WL 3625064, at *4 (D.N.J. Aug. 17, 2011) (citing Allianz Life Ins. Co. of N. Am. v. Bleich, Civ. A. No. 08-668, 2008 WL 4852683, at *5 (D.N.J. Nov. 7, 2008)).

Here, the contract arose when Defendant resided in the Phillipines and Plaintiff resided in New Jersey. (Def. Br., ECF No. 8 at 4). Plaintiff's claims are concerning numerous agreements with Defendant. (See Compl. at 2-4, ECF No. 1). Based on the reading of the Complaint and the time period in which the facts surrounding the claims allegedly occurred, the terms of each of the agreements were negotiated while Defendant resided in the Phillipines and Plaintiff resided in New Jersey. (Def. Br. at 4, ECF No. 8 and Compl. at 2-14, ECF No. 1). The same holds for when the alleged breaches and fraud occurred. (Id.). Based on a reading of the Complaint and Plaintiff's reply, Plaintiff alleges that the work he performed for Defendant were performed in New Jersey. (Pl. Rep. at 2- 4, ECF 13). Accordingly, this factor weighs against transfer.

### c. The Relative Convenience of the Parties, Convenience of the Witnesses and Location of Documents

This factor requires the Court to examine "the convenience of the parties as indicated by their relative physical and financial condition." Jumara, 55 F.3d at 879.

#### i. Convenience of the Parties - Medical Issues

Defendant contends that the inconvenience to Defendant in litigating this case in New Jersey due to his medical condition "outweighs the inconvenience to Plaintiff." (Def. Rep. at 9, ECF No. 12). Defendant asserts that he "suffers from numerous physical disabilities that would make travel to New Jersey incredibly burdensome and painful." (Id.). Defendant asserts that he has been hospitalized and is under the care of several physicians "and his health continues to degenerate." (Id. at 8). Defendant submitted a letter dated February 9, 2016 from Dr. Kin C. Wong, M.D. ." (Ex C., ECF No. 12-1). The letter states that Defendant suffers from "rhino

sinusitis, chronic dyspnea and severe gastroesophageal reflux." (Id.). Furthermore, the letter states that Defendant has "active symptoms from the above disorders." (Id.). The letter states that Defendant is advised, "to avoid air travel while his medical conditions are unstable and symptoms are active." (Id.). Defendant also submitted an x-ray report and x-ray scan dated September 14, 2012. (Ex. B., ECF No. 12-1). The x-ray report provides a letter head identifying the report was prepared by Chong Hoa Hospital located in Cebu City, Phillipines. (Id.).

In addition, Defendant states that he suffers from "cognitive disabilities" due to an unrelated injury in 2004. (Def. Br. at 5-6, ECF No. 8). Defendant explains that his illnesses are "aggravated by extensive travel". (Id. at 10). Defendant asserts that the reason why he had to travel to the Phillipines several years ago was in order to receive cancer treatment not accessible to him in the United States. (Def. Rep. at 8, ECF No. 12).

Plaintiff, on the other hand, argues that Defendant has the cognitive ability to travel as Defendant "possessed the cognitive ability to perform complex activities. This included putting together a bunch of international licensing deals, including a deal with Mavshack, which Defendant put together on his own." (Pl. Opp. at 4, ECF No. 9).

Additionally, Plaintiff argues that Defendant's finances and illness should not inhibit Defendant from travelling as Defendant has traveled to numerous places outside of California. (Pl. Opp. Cert., ECF No. 9-1, at 5). Plaintiff contends that Defendant traveled "extensively (to Cannes, Berlin, Toronto, Montreal, Los Angeles, Busan, Seoul, and throughout the Phillipines) while representing films and doing productions work for Center State Productions throughout 2013." (ECF No. 13 at 6). In support of this argument, Plaintiff submitted e-mails between Plaintiff and Defendant from the years 2012-2013. (Pl. Opp. Cert., ECF No. 9-1, at 5). Finally, Plaintiff argues that if this Court determines that the Defendant is unable to travel, there are numerous forms of

communications (such as video conferencing) that are available. (Pl. Opp. Cert., ECF No. 9-1, at 4).

### ii. Convenience of the Parties - Financial Concerns

Defendant asserts that travel to New Jersey would impose significant hardship because he lives on a "relatively modest income." Due to his limited income, Defendant states that the costs of travel to New Jersey depositions and court proceedings "would impose significant hardship on Defendant." (ECF No. 8-1 at 5). Defendant did not provide any records demonstrating his financial condition.

As to Plaintiff's finances, Plaintiff asserts that he is currently living on a "modest fixed income." Plaintiff states that his income is "approximately 50% less than Defendant's income, not including Defendant's investment income." (Pl. Opp. Cert., ECF No. 9-1, at 4). Plaintiff did not provide any documents to demonstrate his financial condition.

The Court finds that the record is unclear as to whether Defendant is unable to travel due to his illness or whether Defendant's medical condition has worsened since the filing of the Complaint. The letter signed by Dr. Wong only states that he is advised "to avoid air travel while his medical conditions are unstable and symptoms are active." (Ex C., ECF No. 12-1). It is unclear whether Defendant is currently experiencing the "active symptoms" addressed in Dr. Wong's letter or whether such symptoms are permanent. The letter includes no mention of the additional ailments Defendant listed in his brief. (See Def. Br. at 5-6, ECF No. 8-1 and Ex C., ECF No. 12-1). Furthermore, the x-ray and x-ray report were dated September 14, 2012. (Ex B., ECF No. 12-1). Plaintiff has provided evidence that Defendant had the ability to work and was able to travel for employment purposes during the time in which the x-ray was taken. (Pl. Opp. Cert., ECF No. 9-1, at 5).

Moreover, based on the parties' failure to submit any documentation in support of their financial status, the Court is unable to determine whether either party would suffer hardship.

Therefore, this factor is neutral to the transfer analysis.

### iii. Convenience of the Witnesses

The next relevant factor under the private interest analysis is the convenience of the witnesses and the evidence of both parties to the available districts. The Supreme Court has stated:

> To examine the relative ease of access to sources of proof and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.

Van Cauwenberghe v. Biard, 486 U.S. 517, 528, 1988 U.S. LEXIS 2587, (1988) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947). This factor is only relevant "to the extent that the witnesses may actually be unavailable for trial in one of the fora." Id.

As discussed above, Plaintiff brings claims against Defendant for failure to repay a loan, breaching agreements made in connection to that loan, making false representations as to having the capability to attain regulatory approval for content providers in the Phillipines, and breach of the April 2, 2014 agreement to repay Plaintiff. (Compl. at 5-8, 22-25, ECF No. 1).

Defendant identified at least thirty witnesses that currently reside in California. (Def. Br., ECF No. 8 at 4). Out of the thirty witnesses listed, Defendant identified five witnesses connected to Plaintiff's allegations concerning "the project to get the movie 'Thy Womb' nominated for a Golden Globe. (Def. Rep., ECF No. 12 at 6). According to Defendant, all of these witnesses reside in California. Defendants also identified five witnesses that are connected to Plaintiff's allegations concerning "XYZ Films ('Sapi-The Movie')". (Id.). Defendant submits that all of

13

these witnesses reside in California. (Id.). Additionally, Defendant identifies a witness that will offer testimony to Plaintiff's allegations concerning the "Swedish production company Mavshack AG". (Id.). According to Defendant, this witness, Jerry Lozano, "is a resident of California, the Phillipines, and Hong Kong..." (Id.).

Defendant argues that these witnesses testimony cannot be taken through video transmission as, "a trier of fact should not be forced to rely on deposition evidence when the deponent's live testimony can be procured." (Def. Rep., ECF No. 12 at 7) (citing Blender v. Sibley, 396 F. Supp. 300, 303 (E.D. Pa. 1975)).

Plaintiff also identified four witnesses "that can attest to Plaintiff's belief and reliance on Defendant's misrepresentations regarding his ability to provide regulatory approval and perform other business functions in the Phillipines." (Pl. Opp. at 6, ECF No. 9). The witnesses are located in New Jersey, New York, Ohio and Florida. (Id.).

In response to the list of witnesses Defendant provided, Plaintiff contends that Defendant has not argued that the witnesses will be unavailable or are unwilling to testify in New Jersey. (Pl. Opp. At 12, ECF No. 9). Additionally, Plaintiff argues that Defendant has failed to demonstrate that any of the Defendant's witnesses have any connection to this case: "Defendant has provided a groundless laundry list of potential Californian witnesses without stating their relevance, what they are witnesses to, as they are immaterial to this case." (Id.). First, Plaintiff contends that "[a]ll material matters originate and occurred in the Phillipines and New Jersey" and that "[t]he state of California and Californian witnesses are inconsequential in this case." For example, Plaintiff asserts that Defendant "never spoke or met with Netflix or other content provider, production company, or related party in California in matters relating to this case." (Pl. Sur-Rep., at 6, ECF No. 13). Second, Plaintiff asserts that contrary to Defendant's allegations that, only one meeting,

14

concerning the claims in this case, took place in California. (Pl. Sur-Rep., at 5, ECF No. 13). Plaintiff further argues that "[o]ther than Glen Zipper and Doug Green, all Defendant's Californian witnesses have imperceptible to zero connection to Defendant's fraud and breach in this case." (Pl. Opp. at 3, ECF No. 9-1).

There is not enough on the record at this time for the Court to determine the importance of each of Defendant's witnesses. First, Defendant has not demonstrated that the witnesses are unwilling to testify or unavailable to testify in New Jersey. Second, Defendant fails to demonstrate how these witnesses testimony are critical or relevant to Plaintiff's cause of action or to Defendant's defenses. For example, Defendant listed Glenn Zipper, Peter Broderick, Jonathan Yudis and David Bianchi; it is unclear as to how the testimony of these four potential witnesses are relevant to Plaintiff's claims or Defendant's defenses. In an email chain between Plaintiff and Defendant, Defendant informs Plaintiff that he listed these four people as references for a teaching position in the Phillipines. (Pl. Sur –Rep. at 18-19, ECF No. 13). Defendant requested Plaintiff contact each of these people to assist Defendant in getting good references. (Id.). Furthermore, in Defendant's revised list of witnesses, Defendant failed to explain the proposed testimony that each witness would provide. For example, Defendant identified five witnesses that would testify as to matters pertaining to the movie "Thy Womb". (Def. Rep., ECF No. 12 at 6). Plaintiff's allegation concerning the movie was that Plaintiff obtained a license for the movie and Defendant failed to compensate Plaintiff for the work performed. (Compl. at 7-9, ECF No. 1). It is unclear how these witnesses testimony are critical or directly relevant to the claim at issue. Defendant also failed to demonstrate how the witness' testimony to Plaintiff's allegations concerning the "Swedish production company Mavshack AG" is relevant. (Id.).

#### iv. Books and Records

Defendant argues that the relevant documentation is located in California. (Def. Br., ECF No. 8, at 5, 9). Defendant did not identify what documentation is located in California or its relevance to this case. Plaintiff argues that ninety-five percent of the documents are in digital form and can be reproduced in New Jersey. (Pl. Opp. Cert., ECF No. 9-1, at 4).

The analysis of this factor is limited to "the extent that the files could not be produced in the alternative forum." Jumara, 55 F.3d at 879. As nothing in the record demonstrates that the relevant documents would be unavailable in either District, this factor does not weigh in favor of transferring.

### 2. Public Interest Factors

In addition to these "private interest" considerations, the Court of Appeals has directed courts to take certain "public interest" factors into account when adjudicating a motion to transfer, including: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F.3d at 879-80.

#### a. Enforceability of Judgments

This factor is neutral. Defendant agrees that any judgment in this matter would be enforceable in either New Jersey or California.

#### b. Practical Considerations Regarding Trial

"Practical considerations are relevant and warrant transfer if they could make the trial easy, expeditious, or inexpensive. One practical consideration that supports transfer is efficiency."

Metro. Life Ins. Co. v. Bank One, N.A., No. 03-1882 (SDW), 2012 U.S. Dist. LEXIS 137119, * (D.N.J. Sept. 25, 2012).

As discussed above, Defendant contends that the majority of the witnesses reside in California. (Def. Br., ECF No. 8 at 9). Defendant argues that it will be a "nightmare" for the Court to coordinate the appearances of "dozens of third-party witnesses from the West Coast." (Def. Br., ECF No. 8 at 9). Furthermore, the Court would be placing and "overreliance on videotaped *de bene esse* deposition testimony." (Id.).

As discussed above, while it may be more accessible for the Defendants to litigate in the Central District of California, Western Division, Defendants have not demonstrated how each of these potential witnesses are relevant to Plaintiff's cause of action or Defendant's defenses. Therefore, this factor does not weigh in favor of transfer.

### c. **Relative Administrative Difficulty**

The Third Circuit also requires that Courts consider the administrative difficulties associated with proceeding in either district, in light of the relative docket congestion of the forum. Jumara, 55 F.3d at 879. The Defendant states that both Districts are quite busy. Therefore, this factor is neutral.

### d. **Local Interests / Public Policies of the Forum and the Judges' Familiarity With Applicable Law**

Furthermore, Defendant states that both "States have an interest in the proper adjudication of the controversy." (Id.). Plaintiff contends that "New Jersey clearly has a strong interest in this case-protecting its residents from the alleged wrongful acts of a Defendant." (Pl. Br. at 13, ECF No. 9).

In analyzing local interest in the transfer analysis context, this Court has considered the "locus of the majority of the relevant conduct" and where the agreements "transpired," rather than

the residences of the parties. Chigurupati v. Daiichi Sankyo Co., No. CIV. 10-5495, 2011 WL 3443955, at *6 (D.N.J. Aug. 8, 2011) aff'd, 480 F. App'x 672 (3d Cir. 2012). As the agreements here transpired primarily in New Jersey, the Central District of California has little local interest in adjudicating this dispute. As "[t]he burden of jury duty should not be placed on citizens with a remote connection to the lawsuit," New Jersey residents rather than California residents should act as jurors during any trial. See Coppola v. Ferrellgas, Inc., 250 F.R.D. 195, 200-01 (E.D. Pa. 2008) (quoting Nat'l Prop. Investors VIII v. Shell Oil Co., 917 F. Supp. 324, 330 (D.N.J. 1995)).

Therefore, the Court finds that, on balance, the Jumara factors weigh against transferring this matter to the United States District Court for the Central District of California, Western Division. The Court, therefore, finds that transfer is inappropriate under 28 U.S.C. §1404 (a).

### V. Conclusion

Based on the foregoing, Defendant's motion to transfer to the United States District Court for the Central District of California, Western Division is **DENIED** without prejudice.

**SO ORDERED**

_____
JOSEPH A. DICKSON, U.S.D.J.

cc: Hon. Jose L. Linares, C.J.